Case number 22-5310. Tammy Hartzler, appellant, versus Alejandro N. Mayorkas, Secretary of Homeland Security. Ms. McDonough for the appellant, Ms. Oblea for the appellee. Good morning, counsel. Ms. McDonough, please proceed when you're ready. Good morning and may it please the court, Sarah McDonough, counsel for Ms. Hartzler. I'll get right to it. This is a case that respectfully should not have been dismissed on summary judgment. First of all, the district court was too granular in assessing pretext. FEMA claims that it took the adverse actions because of Ms. Hartzler's unacceptable performance, as demonstrated by specific incidents. But instead of viewing those incidents as examples of unacceptable performance, the court treated each incident as a separate reason and opined that Ms. Hartzler couldn't prevail unless she proved that each incident was pretextual. In other words, she had to be perfect. But on the contrary, even FEMA acknowledges that there is an acceptable margin of error. The performance improvement plan, the PIP, says for each improvement action, you must not fail to do this more than one time per month or more than two times per month. Moreover, in each of the cases the district court relied upon, the employer proffered multiple discrete reasons, each of which alone could have supported the challenged action. For example, in Kirkby Small, the employee was fired for four different reasons. Disruptive conduct, disregard for duties, insolence towards management, and failure to follow leave procedures. And so the problem wasn't that the employee couldn't dispute each incident of disruptive conduct or each incident of failure to follow leave procedures. It was that she failed to dispute three of those four major reasons at all. So in this case, you've got your failure to accommodate, and then you've got also the performance improvement plan, which leads to the revocation of the telework, which leads to eventually termination. Yes, your honor. You're focused on the performance improvement plan. Are you bringing any of the failure to accommodate into all of that, or do you believe that this was cabined off it essentially the communication issues? No, we believe that the PIP was imposed in retaliation for her requests for reasonable accommodations, her EEO activity, and the fact that she had disabilities and her supervisors didn't want to accommodate those. But if you look at the time periods of when she's actually making her various informal and or formal complaints, they start in 2015, but then you have the termination way later. I know that there are things going around for some time, but even at the best estimate, I believe that, let's say we use the latest one, November about 2017, would you say that's about correct for when she filed the EEO complaint? Yes, your honor. Then you go into other scenarios about the communication issues. It seems like the failure to accommodate piece was essentially over by then. I don't believe so, your honor. FEMA did not accept Ms. Hartzler's formal complaint until February of 2018, and Mr. Burchette and Mr. Susi, her supervisors, didn't have to start answering for the complaint until May of 2018. Do we have any evidence in the record that Mr. Burchette even knew about that particular complaint, the November 2017, or the February 2019? There is evidence in the record, his EEO affidavit, that at May 2018 that he submitted his required affidavit to the investigator. And what about for February 2019? I'm sorry? February 2019. For that, I don't believe there is in the record, but per the EEO's process, the counselor was supposed to notify him. Okay. Sorry. Okay. And then, sorry, trying to... I just ask you to address something. So for the discrimination claims, it seems part of your best argument is based on the comments that Burchette made in the phone call and in a meeting. For example, your argument is he laughed when she was describing her medical conditions. And I think what the other side says is, well, those actually are, maybe unlike the EEO activity, are about a year in advance of the PIP placement and termination. And that the actual bases for the PIP termination are relatively sort of objective, and the events are undisputed. I just wonder if you have a response to that. I know there's a lot built into it. Absolutely. So, yes, I believe that the mocking and the comments that he made during that September 2017 call is a strong piece of evidence of his discriminatory animus, which has no expiration date. It's not temporal proximity where it just happens to be two things that happen at points of time, and the distance between those is the evidence. Here, he is making objectively derogatory comments about this woman who has no thyroid and cannot control her, regulate her body temperature, who he knows has back issues, I mean, is limited in her mobility, and he's laughing at her and saying, bring your sunscreen, bring your boots, you're gonna be moving tractors around in a muddy field. And so, no, I mean, there's no expiration, no indication that his attitude changed, especially in light of his criticisms in the third quarter review in 2018, where he referred to Ms. Hartzler's request for an ad hoc telework day when it was 102 degrees and she wasn't going to be able to regulate her body temperature as a communication and teamwork, or I'm sorry, as a challenge in teamwork and communication. That's how he referred to her request for an accommodation. And so there was a continuation of those kinds of comments and criticisms made to her about her and connection with both her disabilities and her ability to perform the job. And going back to the line of cases that the court cited, in the proceedings below, the district court already found that there's a genuine disputed material fact as to at least one of the alleged incidents supporting the PIP and one supporting the removal. It should have found more, but based on this, a reasonable jury could find that whatever Mr. Burchette and Mr. Canish believed that Ms. Hartzler did or didn't do, they didn't honestly believe that those things were bad enough that she deserved to be put on a PIP and fired. Relatedly, the court failed to consider reasonableness as a factor of honesty, and these two are linked because a belief may be so unreasonable that a fact-finder could suspect it was not honestly held. Of the two performance elements at issue here, as well as their assessment of the alleged incidents, are extremely subjective. This isn't a matter of she failed to communicate, she, you know, failed to do this. It's along a sliding scale. It's not that she didn't communicate at all, it's that she didn't communicate quite well enough. It's not that she wasn't a team player at all, it's just that on a couple of occasions, they're saying that she failed. So you're not suggesting that any time that you have those kinds of subjective assessments that are going to be inherent in an employment relationship to some extent, and you're not, I don't take you to be suggesting that any time a decision is based on a subjective assessment of that kind, and that it lies at some point in a spectrum where there's points on a continuum, that that necessarily means that some other explanation could have been at work, such that you can't, the defendant can't get No, your honor. No, I understand what you're saying. However, in this case, especially in connection with the removal, all of the alleged deficiencies are subjective, completely subjective. I mean, if you take away the words, oh, you know, you failed in this, look at what she actually did. She forwarded an email saying, please let me know if you'd like to share this with the team. She submitted a weekly activity report that had two bullet points. She forwarded an email. Are these the kinds of things, just looking at them on their face, that are objectively failures? What's your response to the presentation issue where, at least according to the other side, the event was essentially a direct question to her about whether she had posting privileges. She said no, and the answer is yes. So that's a good example, and that one I think is the closest call. However, in the record, there is an email that reflects Mr. Soucy's immediate reaction to discovering that she did, in fact, have rights to access. This is in the appendix at 281, and so this is the email Mr. Soucy sent to Mr. Burchette when he learned that she did have rights. He wrote to her, I'm not sure where the miscommunication with Tammy occurred. I think that this example is directly analogous to what happened in De Jesus, where the employee apologized for requesting a marketing study without his supervisor's approval. In response, she said no worries, but then later she recast that incident as insubordination supporting his firing, and I think that here it's the same thing. He has recast what he calls himself a miscommunication as a failure to engage in teamwork and cooperation, and just as the court did in De Jesus, I think they should make the same finding here, that where the supervisor's immediate response did not hint at any irretrievable misstep, a jury could find that that interpretation of the events, that this was insubordination, not mere miscommunication, so unreasonable that it I think the same happens in connection with the other part of, with the Eagle Horizon exercise, where her supervisors accused her of forwarding an email without context, and then failing to timely provide a requested summary. Here again, when she forwarded the email, Mr. Soucy's immediate response was thank you for sharing, Tammy, and that was at 577. Additionally, the other part of that, that she failed to tell me and provide the debt, the, I'm sorry, the summary, I think a jury could find that they didn't honestly believe that because there was no deadline and no indication that it was urgent. I'm sorry, I see I've run out of time. Let me make sure my colleagues don't have additional questions at this time. We'll give you a little time for rebuttal. Thank you. We'll hear from the government now. Ms. Oblaya. Good morning. May it please the Court, this is Erica Oblaya for Secretary of Homeland Security. This case is about an employee who merely subjectively disagrees with their performance evaluation, evidence that this court has held many times insufficient on its own to establish pretext. In this case, you know, Ms. Hartzler goes through many of the reasons why she believes that she did not perform well, but again, if you look deeply into it, all of it relies a lot on her subjective disagreement. In the performance evaluation, you were trying to connect this kind of with her specific activities, so this is not one that is just a general performance evaluation that's kind of one of your standard documents. This is peculiar to her situation, correct? Yes, your Honor, the performance plan, I'm sorry, the PIPED issue here was specific to Ms. Hartzler. But would you consider that some of these items on here, one could easily fail, and what I mean by that is when you say don't copy someone else on an email, then, you know, easily you could fail that. In today's world, because we're using technology, to me, I would hold that akin to we have kind of a hostile situation here. I don't want to be in a room with you unless somebody else is also present, and so therefore copy somebody on the email because they're present, you know, at least through technology. The evidence here shows, your Honor, that this was a history of Ms. Hartzler being counseled again and again and again. Since 2017 that she was to send up emails appropriately to the individuals, she admits in her paper bottles, in fact, that she was sent specifically a document called supervisory control document, you know, telling her, instructing her specifically who she was supposed to send these appropriate emails to. We see again and again in 2018, Mr. Burchette counsels her in her performance evaluations about sending things, communicating correctly to the right people. In fact, this is a concern that it was shared by Mr. Kadesh, his own supervisor, who said, you know, I've been receiving these emails from Ms. Hartzler, please counsel her appropriately. So in this case, you know, the evidence shows that this wasn't, by the time that Ms. Hartzler got on the PIP, this wasn't the first time she's been notified that she needs to, you know, better communicate her emails to. It was at least a different sort of CCing, right? She's not copying Kadesh anymore. She's copying Susie on her complaints about the PIP plan when Burchette copied Susie on the email with PIP plan. That seems a little nitpicky, doesn't it? The question here is whether Mr. Burchette reasonably and honestly believed that Mr. Susie was an inappropriate recipient for those emails, and Ms. Hartzler has not provided that evidence. Again, you know, the language of the PIP states, you know, he's the one who's handling the PIP. Ms. Gonzales, the HR representative, is the one she's supposed to direct her questions about the PIP to, and again, I will, you know, reiterate again, this was in the context of Mr. Burchette counseling her over the past, you know, since 2017, which is almost two years at this point, about direct her emails to the appropriate individuals. Ms. McDonough started her argument with more of a methodological point that the district court erred by requiring Ms. Hartzler to show that each and every one of the reasons for her PIP placement and then termination were pretextual. What is your response to that? Is it the government's position that if just any one of these seems to be non-pretextual that that's enough to warrant summary judgment? I will try to address that in two ways. First, as to her retaliation claim, I will, the standard there is a but-for causation, and here Mr. Burchette found that Ms. Hartzler had failed the PIP for two reasons, two core reasons. One, that she failed in the teamwork and cooperation, and two, she failed in the communication, and the PIP specifically stated that she had to improve in both areas in order to succeed on the PIP. So, you know, the fact, each of these, each of the failures in, you know, the teamwork and the communication on their own would be independent reasons for her to have failed the PIP. As to the discrimination, it's fairly the same inquiry here. You know, whatever the court might find as to one or the other, at the Have you, you, the government has a lot of these employment discrimination cases, and there's a difference between a reason for a decision being dubious and a reason for a decision being discriminatory. I take that point, but have you encountered a lot of cases in which there's been a sanction visited on because they added additional people to emails that shouldn't have been added to emails? Frankly, I haven't been at the U.S. attorney's office long enough to opine on that. But, I mean, at this case, as this court has held in Fishback, the question is not to know whether this was wise, fair, correct, or whether your honors might have done something differently. It's whether Mr. Burchette reasonably and honestly believed in the reasons that she had, you know, failed in her performance. And this isn't, by the time this, again, by the time this was put on the PIP, this wasn't her first time. She was notified over and over and over again. We need to improve. Zooming in on those communication issues, but starting off, you know, with your opposing counsel's presentation was just that animus from Mr. Burchette from the beginning, you know, just with respect to the mockery about her condition, and then So what would you respond there about the overlying alleged animus? Yes, your honor. I mean, if we do look at all of the evidence, yes, the evidence shows that Mr. Burchette approved her 2018 request for an ergonomic chair. He approved. And I understand that on failure to accommodate, but I'm talking about the bigger picture of them claiming that the animus starts right from the beginning and then keeps bleeding into all the way up to the PIP. At the end of the day, Ms. Hartzler points to two, at best, two comments here. You know, yes, the stray comments have to be considered in the light most favorable to Ms. Hartzler and in the context of all the record. But the context of that record shows that Mr. Burchette's concerns about her performance deficiencies were shared by Mr. Kadesh, whom Ms. Hartzler has failed to proffer any evidence, made any such discriminatory comments. And in the end of the day, Mr. Kadesh was the ultimate decision maker for the termination. If your court has no other questions, we ask that the judgment below be affirmed. Thank you. Thank you. Ms. McDonough will give you two minutes for a rebuttal. Thank you, Your Honors. I just wanted to respond regarding the copying appropriate parties. The district court already concluded that a jury could find that Mr. Burchette, Mr. Kadesh didn't honestly believe it was inappropriate to copy Mr Susi. The court erroneously concluded that Mr. Kadesh didn't know that Mr Chaplain had any connection to the PIP for Ms. Hartzler's discrimination complaint, and therefore he could have honestly thought that he had no connection, shouldn't have been copied. And as opposing counsel mentioned, Mr. Kadesh was the deciding official for the removal. However, Mr. Kadesh did know, or at least have reason to know, in his removal decision at 2-33, at his deposition at 4-76, he confirmed that he considered the written reply that Ms. Hartzler's former attorney submitted. On the second page of that reply, page 580, it explains that Ms. Hartzler filed a prior complaint against Mr. Burchette, a second complaint regarding the PIP. It also says Mr. Chaplain is the agency attorney assigned to Ms. Hartzler's complaint of discrimination, as such, is an appropriate party to the case. Now, at that point, Mr. Kadesh had reason to know that Mr. Chaplain was, in fact, relevant and involved in both the PIP and the rebuttals. He could have walked that back. He could have chosen not to sustain the charge of unacceptable performance and communication, but he didn't. Moreover, the PIP rebuttals themselves are protected activity. She says, you've used the process to further discriminate against me. This is a toxic work environment. You're both fully aware of my disabilities. This is at 5-56. The whole point of these was to dispute the allegations on the merits and to allege that it was instead pretextual and continued discrimination or retaliation. And because this is not just some innocuous email she's sending about work, this is protected activity. Whether Mr Burchette knew or thought that it was protected activity doesn't matter. Respectfully, we ask that you vacate the decision and remand the case for trial. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Childs, Garcia